1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CURLIN PENNICK, III, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. C05-1198 RSM-MJB |
| | ) | |
| v. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| DEAN MASON, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

13

## I. INTRODUCTION AND SUMMARY CONCLUSION

14        Plaintiff Curlin Pennick is a Washington State inmate incarcerated at Monroe

15    Correctional Complex (MCC) in Monroe, Washington.  He brings this action under 42 U.S.C. §

16    1983 alleging that Defendants violated his First, Sixth, and Fourteenth Amendment constitutional

17    rights by confiscating and destroying his legal mail.  Defendants listed in this action:  Dean

18    Mason, Administrator of Grievance Procedure at Monroe; James Spalding, Superintendent of

19    Monroe; Aaron Kessler, Correctional Officer (CO); Heidi Davis, Sergeant; and Tracy Daniel,

20    Custody Unit Supervisor (CUS).  Plaintiff seeks compensatory and punitive damages;

21    declaratory relief; and to enjoin Defendants from obstruction, confiscation, and destruction of his

22    legal mail.

23        Plaintiff filed a motion for summary judgment which Defendants opposed, and

24    Defendants filed a motion for summary judgement which Plaintiff opposed.  Following a careful

25

26    REPORT AND RECOMMENDATION
PAGE - 1

1   review of the parties' cross summary judgment motions, their oppositions thereto, Plaintiff's

2   reply to Defendants' opposition, and the balance of the record, this Court concludes that

3   Defendants' motion for summary judgment should be granted and Plaintiff's summary judgment

4   motion should be denied.

5                               II.  FACTUAL BACKGROUND

6   A.      Undisputed Facts

7           On April 7, 2005, Defendants Kessler and Davis conducted a search of Plaintiff's cell

8   (Dkt. #37 at 2), and confiscated a small portion of his legal materials (Dkt. #42 at 4).  Plaintiff

9   was not allowed to be present during the search of his cell (Dkt. #37 at 2), pursuant to DOC

10  policy (Dkt. #42 at 3).

11          According to DOC policy, inmates may assist one another in legal matters but may not

12  possess other inmates' legal papers outside the institution's law library.  Dkt. 42, Exhibit 1 (Sgt.

13  H. Davis Decl.) at 1.  Many of the legal documents confiscated from Plaintiff pertained to other

14  inmates, particularly to Mr. Richard Carbone, who has a fifth-grade education and is illiterate.

15  Dkt. #38, Attach. Decl. of Richard Carbone; Dkt. #39 at 3.  Plaintiff considers Carbone to be his

16  "client" for the purposes of legal assistance.  Dkt. #47, Exhibit 5 (Plaintiff's Dep.) at 38.

17  Plaintiff believes he is the owner of Carbone's documents because he prepared them.  *Id.* at 38-

18  39, 41.  Confiscated papers pertaining to Carbone were never sent or received in the mail, nor

19  were they part of DOC's mail process.  *Id*. at 73.  Defendant Daniel conducted the disposition of

20  the confiscated legal papers.  Dkt. #47 at 3; Dkt. #37 at 2.  He read the documents aloud in

21  Plaintiff's presence and returned a portion of the materials to Plaintiff.  *Id.*

22  B.      Disputed Facts

23          Defendants contend that Defendant Davis received confidential information that Plaintiff

24  was charging other inmates to perform legal work for them, which is against DOC policy.  Dkt.

25

26  REPORT AND RECOMMENDATION
    PAGE - 2

1  #42 at 2.  According to Defendants, Kessler and Davis conducted the search of Plaintiff's cell

2  based on this information.  *Id.*  However, Plaintiff contends the search was random.  Dkt. #38 at

3  2.  Plaintiff claims he requested to be present for the search of his cell because he believed the

4  cell search constituted a search of his legal mail.  Dkt. #39 at 2.  Plaintiff claims that CO Bettis, a

5  witness to the search, told Plaintiff "you are not allowed to be present during the search of your

6  legal mail," and that Davis told Plaintiff "if you would like to discuss [the] issue of you being

7  present during the search of your legal mail, we can discuss this down in [the segregation unit]."

8  Dkt. #39 at 3.  According to Plaintiff, Kessler stated that Plaintiff should be allowed to be

9  present during the search of his legal mail, to which Davis responded "we can search."  *Id.*

10       Plaintiff contends that Kessler and Davis then confiscated his "legal mail" marked

11  "attorney-client privilege."  *Id.*  Plaintiff asserts that the confiscated materials were attorney-

12  client privileged mail, computer-generated draft legal materials, and typed legal papers belonging

13  to Plaintiff on behalf of inmate Richard Carbone.  *Id.*  Defendants claim that Kessler and Davis

14  found a large file marked "Legal Work" and, pursuant to DOC policies, only confiscated papers

15  in the file which appeared to pertain to other inmates.  Dkt. #42, Exhibit 1 at 2.  Under DOC

16  policy, staff may scan inmates' legal papers to ensure that the papers in fact belong to the inmate

17  who possesses them, but inmates' legitimately possessed legal papers may not be read.  *Id.* at 3.

18       Defendants claim that Daniel did not look at the confiscated papers until he called

19  Plaintiff into his office.  Dkt. # 42 at 3-4; Dkt. #47 at 4.  There, Daniel opened the folder of legal

20  papers in Plaintiff's presence and read each paper aloud to ensure that Plaintiff knew exactly

21  what Daniel was doing and to give Plaintiff an opportunity to demonstrate that his possession of

22  the papers was allowed under DOC policy.  *Id.*  Defendants point out that DOC policy requires

23  that an inmate's own personal legal documents be marked with the inmate's name and DOC

24  number in order to be treated as confidential legal papers.  Dkt. #42, Exhibit 2 (CUS T. Daniel

25

26  REPORT AND RECOMMENDATION
    PAGE - 3

1   Decl.); Dkt. #47 at 4.  Legal papers with a particular inmate's name on them are presumed to be

2   that inmate's legal papers and may not be possessed by any other inmate outside the law library.

3   *Id.*  Defendants claim that none of the papers confiscated from Plaintiff were marked as required

4   to be treated as confidential.  Dkt. #42 at 4; Dkt. #47 at 4.  Defendants contend that Daniel

5   returned Plaintiff's papers to him and returned papers pertaining to other inmates to those

6   inmates.  *Id.*  Plaintiff contends that other legal materials were destroyed.  Dkt. # 38 at 2.

7   Plaintiff also claims that before he left Daniel's office, Daniel stated "[i]f I search your cell,

8   confiscate your legal mail, and find that you are helping other inmates with their legal work, I'm

9   going to ban you from the law library."  Dkt. #39 at 3-4.

10                                III.  DISCUSSION

11          Plaintiff claims that his First, Sixth, and Fourteenth Amendment rights were violated by

12  Defendants, who he claims searched his legal mail outside of his presence, confiscated and

13  destroyed his legal materials, and prevented him from assisting another inmate with legal work.

14  Defendants argue that Plaintiff's legal mail is not at issue and that he does not have a right to

15  provide assistance to other inmates.  Defendants further assert that they conducted their search

16  of Plaintiff's cell and legal materials pursuant to DOC policies and a reasonable understanding of

17  the law, and that they are entitled to qualified immunity on all claims.  Both parties argue that

18  there are no genuine issues of material fact and that they are entitled to summary judgment as a

19  matter of law.

20  A.     Summary Judgement Standard

21          Summary judgment is appropriate when "the pleadings, depositions, answers to

22  interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

23  genuine issue as to any material fact and that the moving party is entitled to judgement as a

24  matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the burden of demonstrating the

25

26  REPORT AND RECOMMENDATION
    PAGE - 4

1  absence of a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256

2  (1986).  The Court is required to draw all inferences in the light most favorable to the

3  nonmoving party.  *Id.* at 248.  Genuine disputes are those for which the evidence is such that a

4  "reasonable jury could return a verdict for the nonmoving party."  *Id.*  Material facts are those

5  which might affect the outcome of the suit under governing law.  *Id.*

6       In opposing summary judgment, the nonmoving party cannot simply rely on mere

7  allegations or unsupported assertions.  *See* Fed. R. Civ. P. 56(e).  The mere existence of a

8  scintilla of evidence in support of the nonmoving party's position is not sufficient.  *Triton Energy*

9  *Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

10       For Plaintiff's § 1983 claims to succeed, he must demonstrate that Defendants, acting

11  under color of state law, deprived him of a right guaranteed under the Constitution or federal

12  statutes.  *E.g., Ortez v. Washington County*, 88 F.3d 804, 810 (9th Cir. 1996).

13  B.   <u>Legal Mail</u>

14       Plaintiff claims that a random search of his cell resulted in seizure of his "legal mail" in

15  violation of his First, Fourteenth, and Sixth Amendment rights. Dkt. #38 at 3.  Plaintiff argues

16  that the materials were clearly labeled  "legal mail" and "attorney-client privilege."  Dkt. #38 at

17  4.  He argues that this labeling put Defendants on notice that reading and confiscating the

18  materials violated his constitutional rights.  Dkt. #39 at 7.  Defendants argue that Plaintiff's

19  rights concerning legal mail were not violated because Plaintiff's legal mail is not at issue.  Dkt.

20  #42 at 8.

21       Interference with legal mail implicates the First Amendment right to free speech.  *See,*

22  *e.g., Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 69 (1983).  Legal mail is defined

23  under the Washington Administrative Code (WAC) as "correspondence to or from courts and

24  court staff . . . attorneys and persons working for attorneys and to established groups involved in

25

26  REPORT AND RECOMMENDATION
    PAGE - 5

1    the representation of inmates in judicial proceedings." Wash. Admin. Code § 137-48-020(6)

2    (1983).

3    Although Plaintiff characterizes the confiscated documents as legal mail, he has presented

4    no evidence that they were ever sent or received through the mail.  Moreover, the Carbone

5    documents were definitely never mailed. Dkt. #42 at 8-9; Dkt. #47 at 12.  Indeed, Plaintiff does

6    not assert that any of the materials were ever mailed or explain how they might otherwise meet

7    the definition of legal mail. Dkt. #38 at 4.  The evidence therefore supports Defendants'

8    argument that Plaintiff's legal mail is not at issue.  Summary judgment should be granted in

9    Defendants' favor on Plaintiff's constitutional claims regarding his legal mail.

10   B.  Search of Legal Materials

11   Plaintiff argues that his rights were violated because his legal mail was read outside his

12   presence during a random search of his cell. Dkt. #39 at 6.  In Washington State, an inmate's

13   legal mail, as defined in WAC 137-48-020, may be inspected only if the inmate is present and

14   only to verify legal mail status or to check for contraband. Wash. Admin. Code § 137-48-030(3)

15   (1983).  Defendants argue, supported by Sgt. Davis's declaration, that their actions were lawful

16   because DOC policy prevents inmates from being present when their cells are searched and

17   allows DOC staff to scan inmates' papers. Dkt. #42 at 10; Dkt. #47, Exhibit 1 at 2; *see also*

18   DOC 590.500.  The cell search itself is not at issue. *See* DOC 420.320; *Hudson v. Palmer*, 468

19   U.S. 517, 526 (1984) (stating that inmates do no have a right to privacy in their cells, which may

20   be searched at any time).

21   Because this Court has already concluded above that Plaintiff's legal mail is not at issue in

22   this case, WAC § 137.48.020(3), which requires that inmates' legal mail only be inspected in

23   their presence, does not apply.  Likewise, Plaintiff's arguments based on *Wolff v. McDonnell*,

24   418 U.S. 539, 540 (1974), which holds that prison officials may open mail from attorneys in the

25

26   REPORT AND RECOMMENDATION
     PAGE - 6

1  presence of inmates to inspect for contraband, are misplaced.  Dkt. #38 at 4; Dkt. #39 at 2.

2  Defendants assert that legal documents, materials, and papers in inmates' cells which are not

3  legal mail are governed by DOC's property and legal access policies.  Dkt. #42, Exhibit 2 at 2.

4  Under DOC's policy on searches, documents identified as an inmate's personal legal materials

5  may not be read except as necessary to confirm that they are legal papers, that they do not create

6  a security threat, and that they do not conceal contraband.  DOC 420.320(V)(B); Dkt. #38 at 4.

7  According to DOC policy, prison staff may also read documents to confirm that they belong to

8  the prisoner who possesses them.  Dkt. #47, Exhibit 1 at 2.  Documents with a prisoner's name

9  on them are presumed to belong to that prisoner.  Dkt. #47, Exhibit 4 (Correctional Manager S.

10 Ramsey Decl.) at 2.  Defendants point out that DOC policy requires that inmates' papers be

11 marked with their name and inmate number to show that the papers are confidential, personal

12 legal papers and may not be read by prison staff.  Dkt. #47, Exhibit 2 at 2.

13 Defendants claim that the papers confiscated from Plaintiff's cell were not marked with

14 Plaintiff's name and inmate number, and Plaintiff does not refute this claim.  Even if the papers

15 were appropriately marked, Plaintiff has presented no evidence that Davis read his papers more

16 than the extent allowed by DOC policy.  Davis stated in a sworn declaration that the papers she

17 found in Plaintiff's cell in a folder marked "Legal Work" appeared to pertain only to other

18 inmates and that to the best of her knowledge she did not read any of Plaintiff's personal legal

19 papers.[1]  Dkt. #47, Exhibit 1 at 2.   Because Plaintiff's arguments assume that his "legal mail" is

20 at issue, he does not argue or offer explanation of how DOC's policies governing inspection and

21 identification of other legal materials have violated his constitutional rights.

22 _____

23   [1] Defendant Daniel also stated in his sworn declaration that he only read enough of each
    document to determine what it was and to whom it belonged, but Daniel's reading of the
24 documents are not at issue because Daniel read the documents in Plaintiff's presence.  Dkt. #47,
    Exhibit 2 at 2.
25

REPORT AND RECOMMENDATION
26 PAGE - 7

1    Defendants have filed documents showing that DOC policy prevents inmates from being

2    present when their cells are searched and allows officers to scan legal documents.  Plaintiff has

3    presented no evidence that his personal legal papers were read and no explanation of how his

4    constitutional rights were affected.  The Court therefore concludes that Defendant Davis acted

5    properly when she instructed Plaintiff to wait outside his cell and scanned his legal documents.

6    Defendants' motion for summary judgment should therefore be granted as to Plaintiff's claims

7    that the search of legal materials violated his rights.

8    C.  Right to Assist Other Inmates

9    Plaintiff argues that he has a right to provide legal assistance to inmate Carbone, and that

10   prison regulation preventing him from providing this assistance affect his First Amendment right

11   to free speech and Sixth Amendment access to the courts.  Dkt. #39 at 6-9.  Plaintiff relies on

12   other Circuits' interpretations of *Johnson v. Avery*, 393 U.S. 483 (1969) to argue that there is a

13   right for "Jailhouse Lawyers" to provide legal assistance to other inmates,[2] that the state cannot

14   place barriers on assistance of counsel,[3] and that the right of mutual assistance among inmates

15   protects and guarantees access to the courts, especially for the blind, illiterate, and mentally

16   handicapped.[4]  Dkt. #38 at 7-8.  Defendants argue that Plaintiff does not have a constitutional

17   right to provide legal assistance to another inmate, and that Plaintiff has not argued or

18   demonstrated that his own constitutional rights have been affected.  Dkt. #42 at 6; Dkt. #47 at 8;

19   *Shaw v. Murphy*, 532 U.S. 223, 225 (2001).[5]  Defendants further assert that Plaintiff has not

20   _____

21        [2] *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986).

22        [3] *Wainwright v. Coonts*, 409 F.2d 1337, 1138 (5th Cir. 1969).

23        [4] *Vaughn v. Trotter*, 516 F.Supp. 886, 892-93 (D.C. Tenn. 1980).

24        [5] *Shaw* held that a ban on correspondence between inmates was not void as to an
25   correspondence containing legal advice because inmates do not have a right to provide legal

     REPORT AND RECOMMENDATION
26   PAGE - 8

1   been prevented from providing legal assistance to other inmates, rather, DOC policy 590.500

2   merely prevents Plaintiff from possessing another inmate's legal papers outside of the law library.

3       Plaintiff has selectively interpreted the cases cited in his arguments.  Under *Johnson* and its

4   progeny, if a state provides reasonable legal assistance to inmates, it may prohibit inmates from

5   assisting one another with legal work.  *Johnson*, 393 U.S. at 488-90.  If a state does not provide

6   inmates with legal assistance, inmates have a right to receive assistance from other inmates, but

7   the state may nonetheless "impose reasonable restrictions and restraints [on] both the giving and

8   the seeking of assistance." *Id.* at 490.

9       Defendants assert that the DOC has provided inmates with sufficient legal assistance such

10   that the prison is not required to allow inmates to give and receive help from one another.  The

11   evidence supports Defendants' argument: law libraries are provided at all major institutions

12   pursuant to DOC policy, and illiterate inmates such as Carbone are provided with DOC contract

13   attorneys and law clerks to assist them in legal matters.  Dkt. #47, Exhibit 3 (Assistant Attorney

14   General D. Carr Decl.), Attach. A, DOC 590.500; Exhibit 4.  In addition, provision of reasonable

15   legal services to inmates is required by law in Washington State.  Wash. Rev. Code § 72.09.190

16   (1981).

17       Plaintiff argues that he had to help Carbone because no one else would, but this argument is

18   not compelling given the assistance available to Carbone under RCW 72.09.190.  Plaintiff did not

19   submit evidence that Carbone made unsuccessful attempts to utilize the legal assistance available

20   to him.  Dkt. #42 at 8; Dkt. #47 at 10.  Plaintiff's claim that he has a right to provide assistance

21   to other inmates therefore fails under *Johnson* because DOC provides ample legal assistance to

22   inmates, such that it may impose limitations on inmates giving legal assistance to each other.

23   Dkt. #42 at 7; Dkt. #47 at 10.  Even if the DOC did not provide inmates with legal assistance,

24   ──────────────────

25   assistance to another inmate.

REPORT AND RECOMMENDATION
26   PAGE - 9

1   DOC 590.500 would nonetheless be a valid restriction on inmates' ability to assist one another

2   because it is reasonably related to legitimate penological interests of reducing prison assaults and

3   debt situations between inmates.  Dkt. #47, Exhibit 4 at 2-3; *Turner v. Safley*, 482 U.S. 78, 79

4   (1987) (internal citations omitted); *see also Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985).

5    Moreover, Plaintiff's constitutional arguments are based on his belief that he has been denied the

6   right to provide assistance to other inmates, but that is not the case.  Under DOC 590.500,

7   inmates may provide one another with legal assistance.  They are merely prevented from

8   possessing other inmates' legal papers outside of the law library.  Therefore, I conclude that

9   summary judgement should be granted in Defendants' favor on this issue.

10   D.  Confiscation and Destruction of Legal Materials

11       Plaintiff argues that during the search of his cell, his legal papers were confiscated and

12   destroyed in violation of his Fourteenth Amendment due process rights.  Plaintiff's arguments are

13   based on *Newell v. Sauser*, 79 F.3d. 115 (9th Cir. 1996), a case in which computer-generated,

14   rough-draft legal materials prepared by an incarcerated plaintiff for another inmate were seized

15   from the plaintiff's cell by a prison guard.  The court in that case held that the plaintiff's due

16   process rights were violated because he: 1) did not have notice that his behavior was

17   sanctionable under the relevant prison regulation, which merely stated that inmates could not

18   possess anything not explicitly authorized; 2) was a designated prison law librarian and was

19   permitted to assist other inmates with their legal work; 3) was allowed to possess a computer in

20   his cell, which implied a right to produce legal documents in his cell; and 4) discipline imposed

21   on him for possessing the draft legal documents became part of his record, subject to review by

22   the parole board.  *Id*. at 116-118.  The prison in *Newell* also created a regulation three weeks

23   *after* the incident involving the plaintiff to specifically prohibit inmates from possessing other

24   inmates' legal materials.  *Id*. at 118.

25

26   REPORT AND RECOMMENDATION
     PAGE - 10

1    Plaintiff argues that, as in *Newell*, DOC's policies did not give him notice that he could not

2    possess the papers, and their confiscation therefore violated his due process rights. Dkt. # 38 at

3    6. Plaintiff also argues that the papers he prepared for Carbone were Plaintiff's property until he

4    gave them to Carbone, who he considered his "client" for legal work. *Id*. Defendants argue that

5    Plaintiff's reliance on *Newell* is misplaced because DOC policy 590.500 explicitly prohibited

6    possession of another inmate's legal work. Dkt. #42 at 11; Dkt. #47 at 14. In addition, Plaintiff

7    was not infracted or punished for having another inmate's legal work. *Id*. Also, unlike Newell,

8    Plaintiff is not a designated law librarian and is not allowed a computer in his cell.

9    Plaintiff responds that he thought it reasonable that he would be allowed to help other

10    inmates with their legal work, nothing in the regulations suggests the contrary, and nowhere does

11    DOC policy indicate that confiscation of legal papers is the proper procedure. Dkt. #44 at 1, 5.

12    Plaintiff further argues that the confiscation of the papers was a form of discipline (Dkt. #44 at

13    2), and that although some papers were returned, some are still missing or were destroyed (Dkt.

14    # 49 at 2). Plaintiff also alleges that Defendant Daniel threatened to ban him from the law library

15    if other inmates' papers were found in his cell. Dkt. #44 at 4.[6]

16    Defendants maintain that papers pertaining to Plaintiff were returned to him and that papers

17    pertaining to other inmates were returned to those inmates. Dkt. #47, Exhibit 2 at 2.

18    Defendants argue that regardless of whether the papers were returned or destroyed, Plaintiff's

19    due process rights have not been infringed upon because he has a meaningful remedy under

20    Washington State law. Dkt. #42 at 10-11; Dkt. #47 at 13-14. Random and unauthorized

21    deprivation of a prisoner's property by a state official or employee, whether the deprivation is

22    negligent or intentional, does not state a claim for violation of due process under § 1983 as long

23

24    [6] The alleged threat, supported solely by Plaintiff's claim, is insufficient to state a Sixth
Amendment violation because Plaintiff was not actually banned and has not shown that the threat

25    resulted in a loss of access to the courts that affected his litigation.

REPORT AND RECOMMENDATION

26    PAGE - 11

as the state provides an adequate post-deprivation remedy for the loss. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981) (holding that due process was not implicated by State's negligent loss of property when Plaintiff could bring tort claim against State); *Hudson*, 468 U.S. at 533 (holding that unauthorized, intentional deprivation of property by state employee did not violate due process when a meaningful post-deprivation remedy for the loss was available).

This Court concludes that Plaintiff had notice that he was not allowed to keep other inmates' papers in his cell because DOC 590.500 explicitly states this rule. Furthermore, confiscation of the papers did not implicate Plaintiff's due process rights, even if it is assumed that the papers were Plaintiff's property and that they were destroyed rather than returned, because Plaintiff has an adequate remedy available to him. He may file a civil action and a tort claim against Washington State for the unlawful loss or destruction of his personal property.[7] *See* Wash. Rev. Code §§ 72.02.045 (2005) (providing for liability for loss of prisoners' property) and 4.92.090 (1963) (providing State liability for loss of property and tortious conduct of its officials and employees); *see also Jeffries v. Reed*, 631 F.Supp. 1212, 1216 (E.D. Wa. 1986) (holding that Washington State provides a meaningful remedy for an inmate's property loss). Therefore, summary judgment should be granted in favor of Defendants on this claim.

E.  Access to the Courts

Plaintiff argues that the seizure of his legal materials and the destruction of some of these materials violated or rendered nugatory his Sixth Amendment right to access the courts. Dkt. #38 at 3, 8. He further argues that a prisoner's uninhibited communication with his or her attorney is a basic prisoner interest, and the central role of postal communications cannot be ignored. Dkt. #39 at 7. However, Plaintiff does not argue that he ever communicated with his

---

[7] Plaintiff indicated that he has filed a tort claim against the state under RCW 4.92.090. Dkt. #44 at 7.

REPORT AND RECOMMENDATION
PAGE - 12

1  "client" by mail or explain how Defendants' actions have inhibited his ability to communicate

2  with his own attorney by mail.

3      Defendants point out that the Sixth Amendment applies only to criminal prosecutions and to

4  the first criminal appeal of right, and that it does not apply to discretionary appeals, collateral

5  attacks to criminal convictions, or to civil cases. Dkt. #42 at 9; Dkt. #47 at 12; *Penn. v. Finely*,

6  481 U.S. 551, 555 (1987). Defendants argue that Plaintiff's claim must fail because he is

7  asserting another inmate's constitutional right to access the courts, not his own. Dkt. #42 at 6-9;

8  Dkt. #47 at 13.

9      Plaintiff correctly argues that prison authorities are required to provide inmates with

10  reasonable access to the courts. Dkt. #39 at 8.[8]  However, an inmate claiming denial of access to

11  the courts must show actual injury or prejudice to his or her litigation in order to establish an

12  access to the court's claim. *Lewis v. Casey*, 518 U.S. 343 (1996). Plaintiff has not alleged nor

13  demonstrated any injury or prejudice to his own litigation, but relies on conclusory allegations

14  that his right to access the courts has been violated by Defendants' seizure of his legal materials.

15  Therefore, Defendants' motion for summary judgment should be granted on this claim.

16  F.  Qualified Immunity

17      Because the Court concludes that Plaintiff did not show any violations of his constitutional

18  rights, we need not address whether qualified immunity would have shielded Defendants from

19  liability. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

20  G.  Motion for Temporary Restraining Order

21

22      [8] *See Bounds v. Smith*, 430 U.S. 817, 821 (1977), which holds that the right of access to

23  courts requires prison authorities to provide prisoners with adequate law libraries or adequate
   assistance from persons trained in the law. Plaintiff does not argue that he is incarcerated in a

24  facility without an adequate law library or that he has been denied assistance from persons trained
   in the law.

25

26  REPORT AND RECOMMENDATION
   PAGE - 13

1    Subsequent to the parties filing their summary judgment motions, Plaintiff filed a motion for

2  an Emergency Temporary Restraining Order ("TRO") prohibiting Defendants and their

3  subordinates from confiscating legal documents Plaintiff prepared on behalf of fellow inmate who

4  may be illiterate.  Dkt. #54.  Plaintiff's TRO motion raises essentially the same issues that are

5  addressed in sections C and D of this discussion.  In light of the Court's recommendation that

6  summary judgment should be granted in favor of Defendants on those issues, the undersigned

7  recommends that Plaintiff's motion for TRO be denied.

8                                  IV.  CONCLUSION

9    For the foregoing reasons, this Court recommends that Plaintiff's motion for summary

10  judgment be denied, and that Defendants' motion for summary judgment be granted and this

11  action dismissed with prejudice.  This Court further recommends that Plaintiff's motion for TRO

12  be denied.  A proposed order accompanies this Report and Recommendation.

13    DATED this 18th day of July, 2006.

14

15

16                                    _____
                                     MONICA J. BENTON
17                                    United States Magistrate Judge

18

19

20

21

22

23

24

25
REPORT AND RECOMMENDATION
26 PAGE - 14